In the Matter of the Application and Petition of GEORGE J. GILLES-
PIE and Others, Constituting the Board of Water Supply of the
City of New York, to Acquire Real Estate, etc.

(Delaware Section, 1, 2 and 3.   Eastern Department, Westchester
County.)

Supreme Court, Westchester County, January 6, 1940.

*William C. Chanler, Corporation Counsel* [*Theodore R. Lee* of
counsel], for the petitioner.

*Seibert & Riggs* [*Royal E. T. Riggs* of counsel], for the claimant
Oliver B. Capen.

*Edward P. Barrett* [*Harrison T. Slosson* of counsel], for the
claimants Eleanor Iselin (Parcel 840) and Gerald Whitman (Parcel
845).

MOTION TO CONFIRM REPORT. (CAPEN PARCELS.)

NOLAN, J. The owner of this property, none of which was actually taken in this proceeding, and which is separated from Parcel 855, taken by the city, by Harris street, a country road, has claimed compensation for damage to his property, by virtue of section 19 of chapter 724 of the Laws of 1905, and section 8 of chapter 725 of the Laws of 1905. Section 19 of chapter 724 of the Laws of 1905 provides that the owner or any person interested in real estate, contiguous to property taken or entered upon and used and occupied for the purposes contemplated by the statute, and which may be affected by the construction and maintenance of said aqueducts, etc., whether such contiguous real estate is shown on the maps or not, may make claim for compensation. Section 8 of chapter 725 of the Laws of 1905 provides that any person owning private property not actually taken, but which will, in his opinion, be damaged by proceedings taken or proposed to be taken, shall be entitled to compensation. In view of the conclusion reached, it is unnecessary to determine whether this claimant's property is " contiguous " within the meaning of the statute, or whether chapter 725 of the Laws of 1905 is amendatory of or supplemental to chapter 724.

The claim is made that the property in question has been permanently damaged, in that it has been rendered unsalable and unleasable during the period of construction, by virtue of its proximity to the construction work, which includes the erection of buildings with blowers, compressors and blacksmith's shop, for sharpening drills, drilling, blasting and removal of spoil by trucks, and by virtue of the fact that the city has acquired an adjacent tract of ten and one-half acres in connection with the construction of the shaft, which it may use for any purpose which it sees fit to use it for in the maintenance of the aqueduct. Claimant contends that by virtue of the uncertainty of the use to which this property may be put, the character of the neighborhood has been changed to his detriment, and his property has permanently depreciated in value.

While the claimant's situation is one which appeals to the sympathy of the court, I do not believe that his claim may be sustained. It is evident that he has been and will be considerably inconvenienced and that his property will, at least temporarily, decrease in value. It is not unnatural that he should seek compensation, and if the award of such compensation were permissible, it should be made. Unfortunately, such compensation may not be made, in the absence of express statutory provision therefor. (*Radcliff's Executors* v. *Mayor*, 4 N. Y. 195.) With respect to the claim for temporary damage occasioned by the work of construction, it

appears to have been conclusively decided that such a claim may not be sustained, under the statute in question, and similar enactments. (See *Lester* v. *Mayor*, 79 Hun, 478; affd., 150 N. Y. 578; *Matter of Squire*, 125 id. 131; *Matter of Thompson*, 43 Hun, 416; *Matter of Board of Water Supply* [*Hill View Reservoir*], 73 Misc. 231.)

With respect to the claim for damage by reason of the proximity of the taking, and the change in character of the neighborhood, due to the uncertainty of the use to which the parcel acquired will be put, I am of the opinion that the statutes in question do not contemplate compensation for such damage. In the absence of clear language imposing such liability, statutes providing for compensation for property damaged or affected by a public improvement, are not intended to embrace every species of loss or depreciation in value, even though such loss or depreciation may be due directly to the improvement. In my opinion, the statutes in question, providing for compensation to the owners of property " affected ' or " damaged," do not contemplate compensation unless the property is physically affected, or the owner is disturbed in the enjoyment of some right which he is entitled to make use of, in connection with his property. Loss or depreciation arising from mere proximity of the work or improvement, or from its unsightly nature, or its incongruity with the uses to which neighboring property is put, may not be recovered. (See 10 R. C. L. 167; 20 C. J. 674; Lewis, Eminent Domain [3d ed.], § 366, and cases cited.)

Moreover, the evidence as to permanent depreciation in value is, in my opinion, highly speculative. The structures and machinery are temporary and will be removed on the completion of the work. The city has entered into a contract with the county of Westchester for the removal of excavated material. The shaft will be sealed, and the site will be sodded and seeded. There appears to be no basis for a determination that the shaft site will be unsightly after the completion of the work, or that the property acquired will be put to a use which will be objectionable. However, if some structure may be erected thereon which will be unpleasing in appearance, the same result might be accomplished by any other purchaser of the property, and no recovery could be had. Report confirmed.

MOTION TO CONFIRM REPORT. (ISELIN AND WHITMAN PARCELS.)

The commissioners have made a nominal award in these cases for the taking of a sub-surface easement. The tunnel to be constructed will be 470 to 500 feet below the surface. Under the circumstances disclosed by the testimony, the property in question has been technically damaged but, in my opinion, the damage is not

such as to call for any greater than a nominal award. The contention that claimants have suffered damage, because of the hazards of well drilling in the vicinity of the aqueduct, and because of the lack of monuments showing the location of the tunnel, have been considered by the commissioners as not sustained by the evidence. Upon an examination of the testimony, I do not believe that their determination in this respect should be disturbed. The existence of the easement is not a substantial incumbrance. (*Boehringer* v. *Montalto*, 142 Misc. 560; *Matter of Gillespie*, 243 App. Div. 707; *Matter of City of New York* [*Tunnel Street*], 160 id. 29; affd., 212 N. Y. 547.) Report confirmed.

MOTIONS FOR COUNSEL FEES AND EXPENSES FOR WITNESSES.
(WHITMAN, ISELIN AND CAPEN.)

Allowances for counsel fees, under the provisions of the statute pursuant to which this proceeding was commenced, are limited by section 1513 of the Civil Practice Act. (*Matter of Simmons*, 208 N. Y. 69; *Matter of Simmons*, 71 Misc. 152.) No allowance may be made to counsel, therefore, above five per cent of the awards made to these claimants.

The commission has not recommended payment of any specific sums as allowances for compensation of witnesses. They have, however, recommended payment of such sums as may seem proper to the court as expenses and disbursements in the cases of Eleanor Iselin and Gerald Whitman, claimants with respect to Parcels 840 and 845, respectively. The claimant Eleanor Iselin requests compensation for witness fees in the sum of $770. Such compensation is allowed in the sum of $420, computed as follows: For the services of the witness Strait, $70; for the witness Bowman, $210; for the witness Leonard, $70; and for the witness Harding, $70. The claimant Gerald Whitman requests compensation for witness fees in the sum of $245. Such compensation is allowed in the sum of $140, computed as follows: For the witness Bowman, $70; and for the witness Leonard, $70. While the court appreciates the necessity for the services of such witnesses in connection with the claims made, and the fact that payment must be made for services which they rendered, the statute does not contemplate payment for services in the nature of counsel or aid in preparation of briefs or arguments. The sums allowed represent an allowance for inspection, preparation by the witness and attendance. The claimant Capen asks compensation for expense of witnesses in the sum of $890. Allowance is made in the sum of $420, computed as follows: For the witness Bowman, $175, and for the witness Clapp, $245.

Settle orders on notice.

Motion to fix compensation of commissioners granted, and order signed.