ROBERT E. WHALEN, Appellant, v. THE UNION BAG AND PAPER COMPANY, Respondent.

Nuisance — injunction — pollution of a stream — when injunction cannot be denied because injury to plaintiff is small as compared with loss to defendant caused by injunction.

1. Where the evidence in an action for an injunction clearly establishes an unlawful invasion of plaintiff's rights by the defendant an injunction cannot be denied because the actual damage to the plaintiff from the continuance of the alleged wrong will be slight as compared with the defendant's expense of abating the condition.

2. Where in an action by the owner of a farm against a large and important paper manufacturing company for an injunction to restrain the defendant from continuing to pollute the waters of a stream running through his farm, the facts proved and found establish a clear case of pollution of the stream by the discharge therein of large quantities of noxious and destructive chemicals, pulp wood, sawdust and other refuse, and that the use and value of plaintiff's farm have been and are injuriously affected thereby, it is error for the Appellate Division to reverse the injunction granted by the trial court, because of the great loss likely to be inflicted on the defendant by the injunction as compared with the small injury caused to the plaintiff's land by that portion of the pollution which was regarded as attributable to the defendant. Such a balancing of injuries cannot be justified by the circumstances of the case.

*Whalen* v. *Union Bag & Paper Co.*, 145 App. Div. 1, modified.

(Argued March 5, 1913; decided March 25, 1913.)

1

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 26, 1911, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert E. Whalen,* appellant, in person. Upon the Special Term's findings of fact, modified only as to the quantum of money damages, plaintiff is entitled to a permanent injunction as matter of law. (*Strobel* v. *Kerr Salt Co.,* 164 N. Y. 303; *Gardner* v. *Village of Newburgh,* 2 Johns. Ch. 162; *Corning* v. *T. I. & N. Co.,* 40 N. Y. 191; *Chapman* v. *City of Rochester,* 110 N. Y. 273; *Moody* v. *Village of Saratoga Springs,* 17 App. Div. 207; 163 N. Y. 581; *Butler* v. *Village of White Plains,* 59 App. Div. 30; *Sammons* v. *City of Gloversville,* 34 Misc. Rep. 459; 175 N.Y. 346; *Warren* v. *City of Gloversville,* 81 App. Div. 291; *Sammons* v. *City of Gloversville,* 81 App. Div. 332; *Pendorf* v. *City of Rome,* 203 N. Y. 645.)

*J. S. L'Amoreaux* and *James Boyd Potter* for respondent. The granting of injunctive relief is discretionary. (*Loukes* v. *Payne,* 140 App. Div. 777; *Gray* v. *M. R. Co.,* 120 N. Y. 499; *Knoth* v. *Manhattan R. Co.,* 187 N. Y. 243; *McClure* v. *Leaycroft,* 183 N. Y. 41; *Thomas* v. *M. M. P. Union,* 121 N. Y. 45.) In view of the slight advantage to plaintiff and the great loss that will be inflicted on defendant, equity requires the denial of injunctive relief. (*Genet* v. *D.. & H. C. Co.,* 122 N. Y. 505; *People* v. *Canal Board,* 55 N. Y. 390; 2 Farnham on Waters & Water Rights, 1691, 1709, 1710; *Claude* v. *Weir,* 4 Mont. 197; *People* v. *Transit Dev. Co.,* 115 N. Y. Supp. 304; *McCarthy* v. *B. H. Mining Co.,* 164 Fed. Rep. 940; *Bliss* v. *Anaconda Mining Co.,* 167 Fed. Rep. 371; *Health Dept.* v. *Purdon,* 99 N. Y. 237; *Townsend* v. *Bell,* 167 N. Y. 462; *Penrhyn* v. *Granville,* 181

N. Y. 80; *Knoth* v. *Manhattan R. Co.*, 187 N. Y. 243; *McCarty* v. *Gas Co.*, 189 N. Y. 40; *Riedman* v. *Light Co.*, 56 App. Div. 23; *Bentley* v. *Cement Co.*, 48 Misc. Rep. 457.)

Werner, J. The plaintiff is a lower riparian owner upon Kayaderosseras creek in Saratoga county, and the defendant owns and operates on this stream a pulp mill a few miles above plaintiff's land. This mill represents an investment of more than a million dollars and gives employment to 400 or 500 operatives. It discharges into the waters of the creek large quantities of a liquid effluent containing sulphurous acid, lime, sulphur, and waste material consisting of pulp wood, sawdust, slivers, knots, gums, resins and fibre. The pollution thus created, together with the discharge from other industries located along the stream and its principal tributary, has greatly diminished the purity of the water.

The plaintiff brought this action to restrain the defendant from continuing to pollute the stream. The trial court granted an injunction to take effect one year after the final affirmance of its decision upon appeal, and awarded damages at the rate of $312 a year. The Appellate Division reversed the judgment of the Special Term upon the law and facts, unless the plaintiff should consent to a reduction of damages to the sum of $100 a year, in which event the judgment as modified should be affirmed, and eliminated that part of the trial court's decree granting an injunction. The plaintiff thereupon stipulated for a reduction of damages, and then appealed to this court from the modified judgment. The facts found by the trial court — which do not appear to have been disturbed by the Appellate Division — establish a clear case of wrongful pollution of the stream, and need not be set forth in detail.

The plaintiff is the owner of a farm of two hundred and fifty-five acres, and the trial court has found that its

use and value have been injuriously affected by the pollution of the stream caused by the defendant. The defendant conducts a business in which it has invested a large sum of money and employs great numbers of the inhabitants of the locality. We have recently gone over the law applicable to cases of this character (*Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303; *Sammons* v. *City of Gloversville*, 175 id. 346), and it is unnecessary now to restate it. The majority of the learned court below reduced the damages suffered by the plaintiff to $100 a year, and reversed that portion of the decree of the trial court which awarded an injunction. The setting aside of the injunction was apparently induced by a consideration of the great loss likely to be inflicted on the defendant by the granting of the injunction as compared with the small injury done to the plaintiff's land by that portion of the pollution which was regarded as attributable to the defendant. Such a balancing of injuries cannot be justified by the circumstances of this case. It is not safe to attempt to lay down any hard and fast rule for the guidance of courts of equity in determining when an injunction shall issue. As Judge Story said: "It is impossible to foresee all the exigencies of society which may require their aid and assistance to protect rights or redress wrongs." (2 Story's Eq. Juris. [10th ed.] § 959b.)

One of the troublesome phases of this kind of litigation is the difficulty of deciding when an injunction shall issue in a case where the evidence clearly establishes an unlawful invasion of a plaintiff's rights, but his actual injury from the continuance of the alleged wrong will be small as compared with the great loss which will be caused by the issuance of the injunction. This appeal has been presented as though that question were involved in the case at bar, but we take a different view. Even as reduced at the Appellate Division, the damages to the plaintiff's farm amount to $100 a year. It can hardly be said that this injury is unsubstantial, even if we should

leave out of consideration the peculiarly noxious character of the pollution of which the plaintiff complains. The waste from the defendant's mill is very destructive both to vegetable and animal life and tends to deprive the waters with which it is mixed of their purifying qualities. It should be borne in mind also that there is no claim on the part of the defendant that the nuisance may become less injurious in the future. Although the damage to the plaintiff may be slight as compared with the defendant's expense of abating the condition, that is not a good reason for refusing an injunction. Neither courts of equity nor law can be guided by such a rule, for if followed to its logical conclusion it would deprive the poor litigant of his little property by giving it to those already rich. It is always to be remembered in such cases that "denying the injunction puts the hardship on the party in whose favor the legal right exists instead of on the wrong-doer." (Pomeroy's Eq. Juris. vol. 5, § 530.) In speaking of the injustice which sometimes results from the balancing of injuries between parties, the learned author from whom we have just quoted, sums up the discussion by saying: "The weight of authority is against allowing a balancing of injury as a means of determining the propriety of issuing an injunction." To the same effect is the decision in *Weston Paper Co.* v. *Pope* (155 Ind. 394). "The fact that the appellant has expended a large sum of money in the construction of its plant and that it conducts its business in a careful manner and without malice can make no difference in its rights to the stream. Before locating the plant the owners were bound to know that every riparian proprietor is entitled to have the waters of the stream that washes his land come to it without obstruction, diversion or corruption, subject only to the reasonable use of the water, by those similarly entitled, for such domestic purposes as are inseparable from and necessary for the free use of their land; and they were bound also to know the character of their proposed business, and to

take notice of the size, course, and capacity of the stream, and to determine for themselves at their own peril whether they should be able to conduct their business upon a stream of the size and character of Brandywine creek without injury to their neighbors; and the magnitude of their investment and their freedom from malice furnish no reason why they should escape the consequences of their own folly."

This language very aptly expresses the rule which we think should be applied to the case at bar.

The judgment of the Appellate Division, in so far as it denied the injunction, should be reversed and the judgment of the Special Term in that respect reinstated, with costs to the appellant.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, CHASE, COLLIN and HOGAN, JJ., concur.

Judgment accordingly.